**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JACQUELINE WEVODAU ROHRBAUGH, Plaintiff, | : | NO. 1:25-CV-02439 |
| | : | (MUNLEY, D.J.) |
| v. | : | (CAMONI, M.J.) |
| LOWER PAXTON TOWNSHIP BUREAU OF POLICE, *et al.*, Defendants. | : | |

**<u>REPORT AND RECOMMENDATION</u>**

***"Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence." ~ John Adams, December 1770***

## I. INTRODUCTION

Pending before the Court are six motions to dismiss Plaintiff Jacqueline Wevodau Rohrbaugh's *pro se* Amended Complaint (doc. 20), filed by: (1) Michael Patrick Rohrbaugh (doc. 26); (2) Judge Jeffrey B. Engle (doc. 33); (3) Detective Bryan Kunkle and Lower Paxton Township Bureau of Police (LPTBP) (doc. 36); (4) attorney Daniel Devlin (doc. 38); (5) attorney Peter Vaughn and Gettle Vaughn Law, LLC (doc. 44); and (6) van der Veen, Hartshorn, Levin and Lindheim (doc. 46). The undersigned respectfully recommends that the Court grant the

Defendants' motions to dismiss because the Amended Complaint fails to state any claim for which relief may be granted.

## II. BACKGROUND

### A. Factual Background[1]

As alleged, Ms. Rohrbaugh and her ex-husband, Defendant Michael Rohrbaugh, shared custody of their two minor children based on a custody order issued by the Family Court in 2022 (the "Order"). *See* doc. 20 ¶¶ 14, 21-22. The Order provided that if Ms. Rohrbaugh physically resided within a twenty-five mile radius of 2200 Parkway West, Harrisburg, Pennsylvania 17112, then she and Michael Rohrbaugh would alternate physical custody of the children every week. *Id.* ¶¶ 23-24. If Ms. Rohrbaugh moved outside the parameters of the designated area, however, then Mr. Rohrbaugh would have primary physical custody, while Ms. Rohrbaugh would have physical custody during the children's summer break from school. *Id.* ¶ 24.

[1] In considering these motions to dismiss, the Court accepts all factual allegations in the Amended Complaint as true and draws all inferences from the facts alleged in the light most favorable to Plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Based on her understanding of the Order, Ms. Rohrbaugh conferred with her attorney, Defendant Devlin, about whether she could relocate her children to California for the summer, since she had recently decided to move there. *Id.* ¶¶ 30-31. Once Devlin confirmed that she was able to do so in compliance with the Order, Ms. Rohrbaugh began to drive to California with her children on June 15, 2024. *Id.* ¶¶ 31-32. However, the Order also included a special holiday schedule that superseded all other custody provisions and that granted Mr. Rohrbaugh custody of the children from 6 p.m. on the day before Father's Day until 6 p.m. on the day of Father's Day. Custody Order, doc. 37-1 at 4. In 2024, the day before Father's Day was on June 15, 2024.[2]

As alleged, Mr. Rohrbaugh devised a plan with his attorney, Defendant Vaughn, and Devlin, to mischaracterize the Order, deceive Judge Engle, and dispossess Ms. Rohrbaugh of her custody rights in retaliation for exercising her rights under the Order. Doc. 20 ¶¶ 49-54. On June 16, Father's Day, Mr. Rohrbaugh contacted law enforcement, who spoke with Ms. Rohrbaugh over the phone; Ms. Rohrbaugh told the

[2] The Court takes judicial notice of the fact that Father's Day fell on June 16, 2024. Fed. R. Evid. 201(b)(2).

officer that she and the children were en route to California. *See id.* ¶¶ 44-45. The following day, Mr. Rohrbaugh filed a Petition for Emergency Relief in Family Court through Attorney Vaughn, in which he sought to obtain sole legal custody of the children and sanctions against Ms. Rohrbaugh for relocating the children to California without offering notice, gaining court approval, or providing Mr. Rohrbaugh with their destination address. *Id.* ¶¶ 35-36, 42.

On June 18, 2024, acting on Mr. Rohrbaugh's Petition, which allegedly contained false statements, Judge Engle determined that Ms. Rohrbaugh had violated the Order and directed her to return the children to Mr. Rohrbaugh's custody immediately or a warrant for her arrest would issue on June 21, 2024. *Id.* ¶¶ 56-58. Judge Engle's Order also temporarily suspended Ms. Rohrbaugh's custody rights, granted Mr. Rohrbaugh sole physical and legal custody, and directed law enforcement officers to arrest Ms. Rohrbaugh if she did not comply with his directives. *Id.* ¶ 57. On June 21, 2024, Devlin forwarded Ms. Rohrbaugh an email from Vaughn, which the plaintiff perceived to be a threat to incarcerate her if she did not return the children to Mr. Rohrbaugh immediately. *Id.* ¶¶ 60-61, 63. Consequently, Ms. Rohrbaugh decided to return the

children to Mr. Rohrbaugh; but she did not do so until after June 21, 2024, the deadline set by Judge Engle. *See id.* ¶¶ 64, 73-74.

Meanwhile, on June 22, 2024, Detective Kunkle issued a Criminal Complaint and obtained a warrant for Ms. Rohrbaugh's arrest. *Id.* ¶ 65. As alleged, the warrant stated that Ms. Rohrbaugh violated the Order by not relinquishing the children to Mr. Rohrbaugh on June 15, 2024, and that she defied Judge Engle's Order to return the children before June 21, 2024. *See id.* ¶¶ 67, 69, 73. Detective Kunkle's affidavit alleged that probable cause existed to find that Ms. Rohrbaugh had violated Pa. C.S. § 18:2904(a): Interference with the Custody of Children. *Id.* ¶¶ 73, 75.

Ms. Rohrbaugh turned herself in on July 2, 2024, on Devlin's advice. *Id.* ¶¶ 79, 82. At the booking center, the staff notified Ms. Rohrbaugh of a bench warrant for criminal contempt and detainer, and she was held in prison without bail pending a contempt hearing before Judge Engle. *Id.* ¶ 84. Consequently, Rohrbaugh spent four days and three nights in Dauphin County Prison. *Id.* ¶ 86. In September 2024, Ms. Rohrbaugh was found in civil contempt. *Id.* ¶¶ 87, 103.

### B. Procedural History

On December 16, 2025, Ms. Rohrbaugh sued Mr. Rohrbaugh, Judge Engle, Detective Kunkle, LPTBP, Attorney Devlin, Attorney Vaughn, and unnamed "DOES 1-100." Complaint, Doc. 1. On January 21, 2026, Ms. Rohrbaugh filed an Amended Complaint (doc. 20), which became the operative pleading (doc. 23). The Amended Complaint added two law firms as new defendants: Gettle Vaughn Law, LLC, and van der Veen, Hartshorn, Levin and Lindheim. Doc. 20 at 1.

The Amended Complaint asserts seven federal claims: (1) judicial deception and conspiracy under 42 U.S.C. § 1983; (2) fabrication of evidence under § 1983; (3) judicial deception and conspiracy under § 1983; (4) false arrest, false imprisonment, and conspiracy under § 1983; (5) malicious prosecution under § 1983; (6) failure to train under § 1983 and *Monell v. Department of Social Services of City of New York*; and (7) declaratory judgment under 28 U.S.C. § 2201. *Id.* at 19, 22-25, 28, 38 (Counts I-VI, XIII). Ms. Rohrbaugh also alleges six state claims: (1) intentional infliction of emotional distress; (2) civil extortion; (3) abuse of process; (4) fraud and fraudulent concealment; (5) breach of fiduciary

duty; and (6) attorney malpractice. *Id.* at 29-30, 32, 36-37 (Counts VII-XII).

All identified defendants filed motions to dismiss. Docs. 26, 33, 36, 38, 44, 46. Ms. Rohrbaugh filed briefs in opposition (docs. 48-49, 51, 53-55), to which Defendants Michael Rohrbaugh and Kunkle and LPTBP replied (docs. 57-58), followed by a sur-reply brief from Ms. Rohrbaugh (doc. 61). Thus, all six motions are ripe for disposition.

## III. LEGAL STANDARD

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Third Circuit has explained, at its core, Rule 8 fundamentally "requires that a complaint provide fair notice of 'what the . . . claim is and the grounds upon which it rests.'" *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019), citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "Under Rule 8(a)(2), a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id*. at 92, citing Fed. R. Civ. P. 8(a)(2). While a complaint filed by a *pro se* litigant is to be liberally construed, *pro se* litigants must still

allege sufficient facts in their complaints to support a claim and must satisfy the requirements of Rule 8. *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013); *Purisima v. City of Philadelphia*, 738 F. App'x 106, 107 (3d Cir. 2018). Dismissal pursuant to Rule 8 is appropriate where a defendant is left "to guess what of the many things discussed constituted [a cause of action]," *Binsack v. Lackawanna County Prison*, 438 F. App'x 158, 160 (3d Cir. 2011), and where a complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).

On a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified). A district court must conduct a three-step analysis when considering the sufficiency of a complaint under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the

plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler*, 578 F.3d at 210. The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555. Third, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211, quoting *Iqbal*, 556 U.S. at 679. A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210, quoting *Iqbal*, 556 U.S. at 678. On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Additionally, a complaint filed by a *pro se* litigant is to be liberally construed and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94, quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to

support a claim." *Mala*, 704 F.3d at 245. Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Even a *pro se* complaint must recite factual allegations that are enough to raise the Plaintiff's claimed right to relief beyond the level of mere speculation.

### B. Jurisdiction

The Court has subject matter jurisdiction because Ms. Rohrbaugh alleges claims under federal statutes. District Courts have jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the plaintiff's state law claims under 28 U.S.C. § 1367. Further, the district court has referred this case to the undersigned pursuant to 28 U.S.C. § 636, which authorizes, among other things, the undersigned Magistrate Judge to prepare reports and recommendations on potentially dispositive matters.

## IV. ANALYSIS

The undersigned recommends that the Court dismiss the Amended Complaint because it is fatally flawed for many reasons. At the outset, it is necessary to address a fundamental factual issue before turning to legal deficiencies with individual claims.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014), quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" *Id.*, quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "Even if a plaintiff does not attach the subject documents to the complaint, the court may consider them if a defendant attaches them to a motion to dismiss." *Hughes v. UPS*, 639 F. App'x 99, 103 (3d Cir. 2016). "When a plaintiff relies on a document without attaching it to the complaint, the plaintiff nevertheless has notice that the document will be at issue." *Id.* "Indeed, failure to consider such documents would raise the countervailing concern that 'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.'" *Id.*, quoting *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.

Here, Ms. Rohrbaugh's claims are all rooted in the 2022 custody Order. Doc. 37-1. In particular, all of Plaintiff's constitutional claims are premised on her allegations that the Defendants falsely accused her of violating the Order or retaliated for her exercising her perceived rights under the Order. She essentially claims that the Defendants harmed her when they deliberately misrepresented the terms of the Order that authorized, or as Rohrbaugh argues, "mandated," her to transport her children to California. Doc. 20 ¶ 29. She contends that "[n]othing in the [Order] states that Jacqueline was 'supposed to have dropped the children off with [Mr. Rohrbaugh]'" on June 15, 2024. *Id.* ¶ 70. Instead, she claims, the "'prescribed time' for Jacqueline to return the children was 6 p.m. on August 11, 2024." *Id.* ¶ 74. According to the Amended Complaint, the Defendants allegedly misinterpreted the Order intentionally to cause Ms. Rohrbaugh harm and violate her rights. Additionally, while Ms. Rohrbaugh did not attach a copy of the complete Order to her pleadings, she supports her claims by quoting a portion of the Order:

> If Mother's physical residence is within a 25-mile radius of 2200 Parkway West, Harrisburg, Pennsylvania 17112, Mother and Father shall share physical custody children [sic]

> on an alternating weekly basis, with custody exchanges occurring at 6:00 p.m. Sundays.
>
> If Mother's physical residence is outside a 25-mile radius of 2200 Parkway West, Harrisburg, Pennsylvania 17112, Father shall have primary physical custody of the children, and Mother shall have partial physical custody of the children as follows:
>
> > (A) Mother shall have physical custody of the children for the school summer break commencing at 6:00 p.m. on the Sunday that falls between seven (7) and fourteen (14) days following the last day of the school [sic] and ending at 6:00 p.m. on the Sunday that falls between fourteen (14) and twenty-one (21) days before the start of the next school year.

*Id.* ¶ 24.

The Order, therefore, is integral to the Amended Complaint because the Plaintiff explicitly cites to and relies upon the document. Additionally, Rohrbaugh stipulates to the accuracy of the copy of the Order that Defendants Kunkle and LPTBP reproduced with their Motion to Dismiss. *See* Pl.'s Br., doc. 53 at 5; doc. 37-1. Therefore, the undersigned will accept Defendants' reproduction of the Order (doc. 37-1) as a true and accurate copy of the document and consider the Order without converting Defendants' motions into motions for summary judgment.

A review of the Order in its entirety makes clear that provisions of the Order that Ms. Rohrbaugh does not cite take precedence over the portions that she does cite. The Order states, in relevant part, "The holiday schedule shall take priority over the regular and vacation custody schedules set forth above. The parties shall have physical custody of the children during the holidays listed below as follows," and then provides that the children's "Father" will have custody on "Father's Day[:] From 6:00 p.m. the day before Father's Day until 6:00 p.m. on Father's Day." Doc. 37-1 at 4-5. Ms. Rohrbaugh's argument that the holiday provisions only take effect if she resides within 25 miles of Harrisburg is directly contradicted by the plain language of the Order. Doc. 48 at 7. The Order clearly states that the holiday schedule, which grants custody to the children's father on Father's Day and their mother on Mother's Day, takes priority over the custody schedules listed above, which includes the summer vacation provision Ms. Rohrbaugh relies so heavily on. *See* doc. 37-1 at ¶ 7.

This presents the exact scenario that consideration of integral documents at the motion to dismiss stage is intended to prevent:

> the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document

> and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. The Amended Complaint relies on an "isolated statement" from the Order to allege that the defendants purposely and fraudulently misconstrued the Order to deprive her of her rights, but when "examined in the full context of the document," it is clear that allegation fails.

Therefore, based on Ms. Rohrbaugh's own account, she violated the plain terms of the Order when she failed to relinquish custody on June 15, 2024, the day before Father's Day. As alleged: "[O]n Saturday, June 15, 2024, Jacqueline packed the two children into her vehicle and set off for California." Doc. 20 ¶ 32. Taking the facts alleged in the Amended Complaint as true, Ms. Rohrbaugh violated the Order, which directly contradicts all the fundamental allegations of the Amended Complaint. Ms. Rohrbaugh fails to state any plausible claims because her factual allegations do not comport with the "dispositive document" she relies on as their foundation. *Hughes*, 639 F. App'x. at 103.

All of the Amended Complaint's claims flow from a document that contradicts Ms. Rohrbaugh's allegations, so her claims are not facially

plausible because they do not allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler*, 578 F.3d at 210, citing *Iqbal*, 556 U.S. at 678. The Court could grant the motions to dismiss as to all counts on this basis alone.

Additionally, the Court should dismiss the Amended Complaint because it is legally deficient as well. First, this Court lacks jurisdiction over one of Ms. Rohrbaugh's federal claims under the *Rooker-Feldman* doctrine. Second, the Amended Complaint fails to state any federal claims for which relief can be granted. Finally, the Court should decline to exercise supplemental jurisdiction over the state law claims, having dismissed the federal claims.

### A. *Rooker-Feldman*: Counts 1-6

All the Defendants argue that the *Rooker-Feldman* doctrine prevents this Court from asserting jurisdiction over any of Ms. Rohrbaugh's claims. But *Rooker-Feldman* only prevents the Court from adjudicating Count 13, which seeks declaratory judgment under 28 U.S.C. § 2201, as explained below. *Rooker-Feldman* does not apply to the remaining claims.

The *Rooker-Feldman* doctrine prohibits district courts from

exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). More precisely, lower federal district courts are barred from hearing cases in which: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Johnson v. Draeger Safety Diagnostics, Inc.*, 594 F. App'x 760, 764 (3d Cir. 2014) (citation modified), quoting *Great W. Mining & Min. Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010). When the federal court must concern itself with the "bona fides of the prior judgement" to adjudicate the case, the court is prohibited from exercising jurisdiction over the case under *Rooker-Feldman*. *See Great W. Mining & Min. Co.*, 615 F.3d at 169 (citation modified). The court is forbidden from hearing cases in which "the state-court judgment produced the . . . very injury of which the

[plaintiff] complain[s].” *Id.* at 167.

The Court of Appeals for the Third Circuit provides a relevant example:

> Suppose a state court, based purely on state law, terminates a father’s parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.

*Id.* at 166-67, quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005). Thus, *Rooker-Feldman* bars federal district courts from adjudicating claims in which a party “profess[es] to complain of injury by a third party [but] . . . actually complain[s] of injury produced by a state-court judgment.” *Id.* at 167.

However, the Third Circuit also recognized claims that, while at first glance may seem to be barred by the *Rooker-Feldman* doctrine, upon closer inspection, are not. In such cases, where “the source of the injury is the defendant’s actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court.” *Id.* Thus, *Rooker-Feldman* does not prevent federal courts from exercising jurisdiction over a claim if “a

federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment." *Id.*

Here, Ms. Rohrbaugh asserts that her injury was caused by the Defendants' actions and not by the state court judgment, so *Rooker-Feldman* does not bar her claims, save one. While many of Ms. Rohrbaugh's claims easily satisfy the first and third elements of *Rooker-Feldman* as enumerated by *Johnson,* the second element is not satisfied where she alleges harm caused by the Defendants' actions, distinct from the state court's judgment.

For example, Ms. Rohrbaugh avers: "Defendants and each of them [sic] lied in order to deprive Jacqueline of her parental rights, and of her right to be free of incarceration" (doc. 20 ¶ 131); "Detective Officer Kunkle failed to investigate, instead relying on the false statements of Patrick" (*id.* ¶ 138); "Defendants, and each of them, [sic] were the 'complaining witnesses' whose false statements directly caused prosecution" (*id.* ¶ 176); and "Patrick, Vaughn and Devlin formulated a plan to deceive Judge Engle" (*id.* ¶ 54). In most of Ms. Rohrbaugh's claims, she asserts that the actions of the Defendants caused her injuries, rather than the judgement of the state court. Therefore, *Rooker-Feldman* does not bar

most of her claims.

### B. *Rooker-Feldman*: Count 13

Count 13 is the exception. The Court should dismiss Count 13 under *Rooker-Feldman* because that claim alleges an injury "produced by a state-court judgment." *Great W. Mining & Min. Co.*, 615 F.3d at 167. Ms. Rohrbach alleges that Judge Engle misinterpreted the 2022 custody Order and ordered her to return her children to Mr. Rohrbaugh before June 21, 2024, or risk arrest. *See* doc. 20 ¶¶ 56-57. When Ms. Rohrbaugh failed to do so by the required date, it triggered a series of events that caused her to lose custody and be incarcerated. As a result, she asks the Court to issue a "[d]eclaratory [j]udgment stating that she has the right to be free" from Judge Engle's order. *Id.* ¶ 258.

Count Thirteen satisfies all of the elements of a quintessential *Rooker-Feldman* barred claim. Ms. Rohrbaugh (1) lost a custody battle in state court and was held in contempt for not complying with the order to return the children (*see id.* ¶¶ 57, 63-64, 103); (2) complains of being deprived of her parental and liberty rights–injuries suffered because of the state court judgment (*see id.* ¶ 58); (3) the state court judgment was rendered before this federal suit was filed (*see id.* ¶ 103); and (4) Ms.

Rohrbaugh now invites this Court to review and reject the state-court judgment. Because "the state-court judgment produced the . . . very injury of which [Ms. Rohrbaugh] complain[s]" in Count 13, and the Court would need to concern itself with the "bona fides of the prior judgment" to adjudicate that claim, the Court cannot exercise jurisdiction over Count 13 under *Rooker-Feldman*. *Great W. Mining & Min. Co.*, 615 F.3d at 167-169. As Count 13 is the only claim alleged against Judge Engle, he should be dismissed from this action.

**C. Section 1983 and "Nominally Private Actors"**

Second, the Court should dismiss Ms. Rohrbaugh's Section 1983 claims (Counts 1-6) against the defendants whom she describes as the "Nominally Private Actors" (doc. 20 at 18), Mr. Rohrbaugh, Devlin, and Vaughn, because Ms. Rohrbaugh has failed to allege sufficient facts to state a colorable Section 1983 claim against any of them.

Ms. Rohrbaugh alleges that these Defendants violated her (1) Fourteenth Amendment substantive and procedural due process rights by judicial deception and conspiracy (*id.* at 19, 23); (2) Fourteenth Amendment rights by fabrication of evidence (*id.* at 22); (3) Fourth Amendment rights by false arrest or imprisonment (*id.* at 24); and (4)

Fourteenth and Fourth Amendment rights by malicious prosecution (*id.* at 25). Ms. Rohrbaugh acknowledges that Mr. Rohrbaugh, Devlin, and Vaughn are private actors (*id.* at 18), but requests that the Court treat them like state actors because "there is sufficient nexus between Officer Kunkle on the one hand; and the Nominally Private Actors on the other hand; so as to find 'joint action' for purposes of 42 U.S.C § 1983." *Id.* ¶ 116. She explains:

> Here, Defendants were indeed intertwined in a symbiotic relationship. Without Officer Kunkle's failure to investigate, attorneys Vaughn and Devlin would have less work to do, and thus far fewer billable hours. Patrick also benefits in symbiotic fashion simply because, without the cooperation of the other Defendants, he doesn't win in court.

*Id.* ¶ 113. Ms. Rohrbaugh's spurious assertions do not remotely establish joint action between private and state actors.

To establish a claim under Section 1983, the person who committed the injurious conduct must have done so while "acting under color of state law" and have deprived a plaintiff of her rights under the Constitution or federal law. *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998). A Section 1983 claim cannot be premised on private conduct, no matter how discriminatory or wrongful it is, unless there exists "a close nexus between the State and the challenged action

[so] that seemingly private behavior may be fairly treated as that of the State itself." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). This nexus exists if any of three conditions can be proven: (1) the private party exercised powers that are traditionally within the exclusive authority of the state; (2) the private party acted with the help of or in concert with state officials; or (3) the state insinuated itself so far into a position of interdependence with the private party that it must be recognized as a joint participant in the challenged activity. *Id*. Moreover, "a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Polk County v. Dodson*, 454 U.S. 312, 318 (1981); *see also Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (finding that attorneys who perform their traditional functions cannot be considered state actors solely because of their position as court officers).

Based on the facts alleged in the Amended Complaint, none of the actions of the Nominally Private Actors satisfy any of the enumerated conditions or amount to "joint action" between the state and private actors. Contrary to Ms. Rohrbaugh's conclusory assertions, simply benefiting from another party's actions does not establish joint state and

private action. *See Kach*, 589 F.3d at 646; *see also* doc. 20 ¶ 114, citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 923 (1982). Ms. Rohrbaugh's claim that Detective Kunkle's "failure to investigate" (doc. 20 ¶ 113) enabled Mr. Rohrbaugh to win in court and Defendants Vaughn and Devlin to bill their clients more money does not state facts that, if true, would show that the private defendants exercised powers that are traditionally within the exclusive authority of the state or that the state insinuated itself so far into a position of interdependence with them that the state must be recognized as a joint participant. Neither does Ms. Rohrbaugh allege with adequate particularity how the Nominally Private Actors acted with the help of or in concert with state officials, or how they were, as she puts it, "willful participant[s] in joint action with the State or its agents." *Id.* ¶ 114. The Amended Complaint's conclusory allegations fail to state a Section 1983 claim. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Therefore, the Court should dismiss Ms. Rohrbaugh's Section 1983

claims against Mr. Rohrbaugh, Devlin, and Vaughn.

### D. Detective Kunkle

Next, the Court should dismiss Ms. Rohrbaugh's claims against Detective Kunkle because she has failed to allege sufficient facts to state a plausible claim for relief.

#### i. Fourteenth Amendment Substantive and Procedural Due Process Violations Through Judicial Deception and Conspiracy (Counts 1 and 3)

The Court should dismiss Counts 1 and 3, alleging judicial deception and conspiracy, because Ms. Rohrbaugh has not pleaded adequate facts to show that Detective Kunkle engaged in either judicial deception or conspiracy.

Ms. Rohrbaugh contends that Detective Kunkle issued a criminal complaint and obtained an arrest warrant based on the allegation that she violated the 2022 custody Order and Judge Engle's subsequent court order, which Ms. Rohrbaugh claims are false statements. As explained above, based on the plain language of the Order and taking Ms. Rohrbaugh's own alleged facts as true, those statements are not false, so her allegations are not plausible.

Further, with respect to Count 1, the Amended Complaint fails to

allege any facts to state a claim for conspiracy. Ms. Rohrbaugh alleges only that Detective Kunkle "failed to investigate," and "knew, or reasonably should have known" that statements he made in his affidavit of probable cause were false. Doc. 20 ¶¶ 76-77. She does not allege that he did so in "agreement and concerted action" with any of the other defendants, nor set forth any other facts that amount to a claim of conspiracy. *Gross-Quatrone v. Mizdol*, 811 F. App'x 95, 100 (3d Cir. 2020), citing *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009).

To show agreement, the plaintiff "must demonstrate that the state actors named as defendants in the complaint somehow reached an understanding to deny the plaintiff [her] rights . . . and in the absence of direct proof, that 'meeting of the minds' or 'understanding or agreement to conspire' can be 'inferred' from circumstantial evidence." *Jutrowski v. Township of Riverdale,* 904 F.3d 280, 295 (3d Cir. 2018) (citation modified). First, as explained above, none of the other alleged co-conspirators were state actors, so Detective Kunkle could not have engaged in § 1983 conspiracy with them. Second, the Amended Complaint states no facts to suggest a meeting of the minds or

understanding in any way. The Amended Complaint simply fails to allege a conspiracy.

The Amended Complaint also fails to allege judicial deception against Detective Kunkle. A claim of judicial deception is governed by the standards set out in *Franks v. Delaware*, 438 U.S. 154 (1978). Under *Franks*, a plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant only if the plaintiff can establish by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or, with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary to the finding of probable cause. *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000). When assessing the first element, the Supreme Court has made clear that "negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171.

As explained above, Ms. Rohrbaugh does not even allege that Detective Kunkle made false statements deliberately but only claims that he failed to investigate and that he knew or should have known that certain statements were false. Such "mere labels and conclusions"

do not suffice to support a claim that Detective Kunkle knowingly, deliberately, or recklessly made false statements. Further, because the allegedly false statements were not false, Detective Kunkle's affidavit was supported by probable cause. Ms. Rohrbaugh did violate the 2022 custody Order when she failed to relinquish custody to their father on June 15, 2024, the day before Father's Day. And Judge Engle did order her to return the children or face contempt sanctions.

Further, and important to the analysis here, Ms. Rohrbaugh acknowledges that Detective Kunkle relied upon the findings and order issued by Judge Engle in setting forth the statement of probable cause. Doc. 20 ¶¶ 67, 69, 73, 75. By the time the criminal warrant issued, Judge Engle had already ruled that Ms. Rohrbaugh was in violation of the Order and had directed her to return the children to their father, an order she also violated. Those facts, all of which are stated in the Amended Complaint and so are taken as true, directly contradict Ms. Rohrbaugh's allegation that Detective Kunkle knowingly or recklessly made false statements. Therefore, the Court should dismiss Ms. Rohrbaugh's conspiracy and judicial deception claims, Counts 1 and 3,

against Detective Kunkle.

#### ii. Fourteenth Amendment Substantive Due Process Violation by Fabrication of Evidence (Count 2)

Next, the Amended Complaint fails to plead sufficient facts to show that Detective Kunkle fabricated evidence.

To state a claim for fabrication of evidence under the Fourteenth Amendment, Ms. Rohrbaugh must establish that "there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *Boseman v. Upper Providence Township*, 680 F. App'x 65, 69 (3d Cir. 2017), quoting *Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016). Among other things, a plaintiff alleging a fabrication claim must provide "persuasive evidence supporting a conclusion that the proponents of the evidence [were] aware that evidence [was] incorrect or that the evidence [was] offered in bad faith." *Id*. at 70.

As explained above, the allegedly false statements were not false, and even if they were, Detective Kunkle had a sound basis for the allegations, relying on witness statements and a judge's findings. Ms. Rohrbaugh alleges no facts to support a claim that Detective Kunkle

deliberately made false statements or offered any evidence in bad faith. Accordingly, Count 2 should also be dismissed.

### iii. Fourth Amendment False Arrest and False Imprisonment (Count Four)

The Amended Complaint also fails to state a claim for either false arrest or false imprisonment. Ms. Rohrbaugh maintains that Detective Kunkle falsely arrested and imprisoned her because he had no probable cause to do either. Doc. 20 ¶ 164. Because probable cause existed for Ms. Rohrbaugh's arrest and detention, these claims also fail.

To state a claim for false arrest under the Fourth Amendment, Ms. Rohrbaugh must show that (1) there was an arrest; and (2) the arrest was made without probable cause. *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). To state a claim for false imprisonment, Ms. Rohrbaugh must show that (1) she was detained; and (2) the detention was unlawful. *Id.* at 682-83. Ms. Rohrbaugh must also show that Detective Kunkle detained her without probable cause. *Id.* at 683 ("A false imprisonment claim under § 1983 . . . is based on an arrest made without probable cause."). The probable cause analysis is essentially the same for false arrest and false imprisonment. *Harvard v. Cesnalis*, 973

F.3d 190, 202 (3d Cir. 2020).

An officer has probable cause to arrest a person "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016), quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). When determining whether an officer had probable cause to arrest a plaintiff, a Court must consider the totality of the circumstances. *Id.* at 467-68.

Detective Kunkle charged Ms. Rohrbaugh with interference with custody of children in violation of 18 Pa. C.S. § 2904(a), which states: "A person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so." Pennsylvania courts have interpreted the statute to include "the continued maintenance of the child outside of the custodian's dominion." *Commonwealth v. Tompkins*, 253 A.3d 301, at *4 (Pa. Super. Ct. 2021) (table), quoting *Commonwealth v. Stewart*, 544 A.2d 1384, 1385 (Pa. Super. Ct. 1988). As explained above, Detective Kunkle had a sound basis

to allege that Ms. Rohrbaugh was continuing to maintain the children outside of the lawful custodian's dominion without the privilege to do so, because Judge Engle had found that she had done just that.

Further, with respect to the false imprisonment claim, Ms. Rohrbaugh acknowledges that she was not, in fact, detained based on Detective Kunkle's warrant, but because the bench warrant for contempt of Judge Engle's order acted as a detainer. Doc. 20 ¶¶ 83-87. The Amended Complaint frequently conflates and confuses the criminal charge for interference with custody brought by Detective Kunkle and the contempt warrant issued by Judge Engle.

Because the Amended Complaint fails to allege facts that meet the elements of either false imprisonment or false arrest, Count 4 should be dismissed. Because the facts alleged make clear that her arrest was made with probable cause, the claims should be dismissed with prejudice.

#### iv. Fourth and Fourteenth Amendment Substantive Due Process Violations by Malicious Prosecution (Count 5)

Likewise, the Court should dismiss Ms. Rohrbaugh's malicious prosecution claim because she does not plead sufficient facts to satisfy the necessary elements. To state a Section 1983 malicious prosecution

claim, Ms. Rohrbaugh must show: (1) Detective Kunkle initiated a criminal proceeding; (2) the criminal proceeding ended in her favor; (3) the proceeding was initiated without probable cause; (4) Detective Kunkle acted maliciously or for a purpose other than bringing Ms. Rohrbaugh to justice; and (5) Ms. Rohrbaugh suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Jones v. County of York*, No. 19-229, 2020 WL 3892878, at *6 (M.D. Pa. July 10, 2020), citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

Ms. Rohrbaugh fails to plead facts to establish (1) that the proceeding was initiated without probable cause, and (2) that Detective Kunkle acted maliciously. As explained above, the criminal case was initiated with probable cause, which suffices to dismiss the claim. Additionally, Ms. Rohrbaugh pleads only mere conclusions to allege malice, stating, without providing a basis, that "[t]he purpose of Defendants' plan was to take the children away from [Ms. Rohrbaugh] as a means to inflict emotional pain upon her." Doc. 20 ¶ 175. The Amended Complaint contains no facts to suggest that Detective Kunkle was

motivated by desire to inflict emotional pain on the plaintiff.

Thus, the Court should dismiss Ms. Rohrbaugh's malicious prosecution claim against Detective Kunkle.

**v. Qualified Immunity**

Detective Kunkle argues that he is shielded from suit by qualified immunity. Doc. 37 at 19-23. Qualified immunity protects government officials performing discretionary functions so long as their conduct does not violate established constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In some cases, the Third Circuit has implied that "the issue of qualified immunity is only relevant after a court has concluded that a constitutional violation has occurred. In that view, if there is no constitutional violation, there is no reason to reach the qualified immunity issue." *Wright v. City of Philadelphia*, 409 F.3d 595, 600 (3d Cir. 2005), citing *Carswell v. Borough of Homestead*, 381 F.3d 235, 237 (3d Cir. 2004) (internal citations omitted). In other cases, the Third Circuit has held that "a defendant is entitled to qualified immunity unless a plaintiff can prove both that a constitutional right has been violated, and then that the constitutional right violated was clearly

established." *Id.*, citing *Bennett v. Murphy*, 274 F.3d 133, 136-37 (3d Cir. 2002). Under either interpretation, the outcome is identical; if there is no constitutional violation, the plaintiff does not have a cognizable claim.

Here, the Amended Complaint has failed to allege a plausible claim that Detective Kunkle violated Ms. Rohrbaugh's constitutional rights. Accordingly, whether the Court cloaks Detective Kunkle with qualified immunity or declines to address the qualified immunity issue because there is no constitutional violation, meaning there is no cause of action, the outcome is the same. Ms. Rohrbaugh cannot maintain her § 1983 claims against Detective Kunkle.

**E. Lower Paxton Township Bureau of Police (LPTBP)**

Next, the Court should dismiss all claims against LPTBP because Ms. Rohrbaugh fails to plead sufficient facts to state any claims against it, despite naming LPTBP in Counts 1 through 6.

With respect to Counts 1 through 5, all of which allege claims pursuant to § 1983, LPTBP correctly argues that "Municipal entities are only liable under Section 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that

the government as an entity is responsible for under § 1983." Doc. 37 at 23, quoting *Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 694 (1978). Indeed, it is well-settled that government sub-units or departments operated by municipalities are not "persons" amenable to suit under § 1983. *Terrell v. City of Harrisburg Police Dep't*, 549 F. Supp. 2d 671, 686 (M.D. Pa. 2008). Governmental sub-units, including a police department, are not distinct from the municipalities of which they are a part. *See Mikhaeil v. Santos*, 646 F. App'x 158, 163 (3d Cir. 2016). Thus, Counts 1 through 5 fail as to LPTBP, because they all seek to bring claims under § 1983 against a police department, a legal entity that is a sub-unit of its municipality. *See Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 n.2 (3d Cir. 2014) (agreeing with the district court that a police department was not a proper party to a § 1983 action).

Furthermore, the Court should dismiss Ms. Rohrbaugh's *Monell* failure to train claim (Count 6) because she has not pleaded sufficient facts to show a constitutional violation, nor the existence of an official LPTBP policy or custom that caused her harm. To state a § 1983 claim against a municipality or its department or sub-unit, Ms. Rohrbaugh must allege facts to demonstrate that she suffered a constitutional harm,

caused by an official government custom or policy. *Monell,* 436 U.S. at 694. A municipal custom or policy may be illustrated by reference to an express, codified policy or a particular practice that is so permanent and well-settled that it virtually constitutes law, even if it is not legally authorized. *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir. 1996). Ms. Rohrbaugh must also show that the municipality's policies are "the moving force behind the constitutional violation." *City of Canton v. Harris,* 489 U.S. 378, 389 (1989).

In addition, to succeed on a failure to train claim, a defendant's failure to train its employees must reflect a deliberate or conscious choice by the municipality, such that one could call it a policy or custom. *See id.*; *see also Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020). This usually requires a plaintiff to identify a pattern of similar constitutional violations by untrained employees that notifies municipal decisionmakers that a new program is needed or show that the need to train officers was "so obvious." *Johnson*, 975 F.3d at 403. Merely alleging that a particular officer is "unsatisfactorily trained will not alone suffice to fasten liability on the city[.]" *Harris*, 489 U.S. at 390; *see Thomas v. Cumberland County*, 749 F.3d 217, 226 (3d Cir. 2014). Instead, the "focus

must be on [the] adequacy of the training program in relation to the tasks the particular officers must perform." *Harris*, 489 U.S. at 390. Liability for a failure to train claim only arises where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of persons who come in contact with the municipality's employees. *Johnson,* 975 F.3d at 403.

Here, Ms. Rohrbaugh's Amended Complaint is bereft of the necessary facts to state a *Monell* failure to train claim. First, as explained above, she has failed to allege any plausible claim of a constitutional violation. Second, she asserts that Detective Kunkle's failure to investigate the content of the Initial Child Custody Order showed that LPTBP did not properly train him, and this failure to train led Ms. Rohrbaugh to be incarcerated and lose custody rights over her children. Doc. 20 ¶¶ 188-191. However, merely alleging that Detective Kunkle was "unsatisfactorily trained" without explaining how, in greater detail, does "not alone suffice to fasten liability on the city." *Harris,* 489 U.S. at 390. The Amended Complaint fails to allege beyond mere conclusions any facts to show that LPTBP failed to train Detective Kunkle, had an unconstitutional custom or policy, was deliberately indifferent to the

rights of others, or should have been aware that a new training program was needed due to a pattern of similar violations by other untrained officers.

Accordingly, all claims against LPTBP should be dismissed.

**F. State Law Claims: Counts 7-12**

Finally, the Court should decline to exercise supplemental jurisdiction over Ms. Rohrbaugh's state law claims because all the federal claims over which the Court has original jurisdiction warrant dismissal. All defendants named in Counts 7 through 12 have moved for dismissal on various substantive grounds, and, in particular, the two law firm defendants are only named in these state law claims.

Because this case is "in its initial stages[,] it is in the interests of judicial economy, convenience, and fairness to the parties to decline jurisdiction over the remaining state-law claims." *Barraclough v. Animal Friends, Inc.,* No. 23-357, 2024 U.S. App. LEXIS 29768, at *7-8 (3d Cir. Nov. 22, 2024) (citation modified). Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction." *See Byrd v. Shannon*, 715 F.3d 117, 128 (3d Cir. 2013),

citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that when federal claims are dismissed before trial, federal courts should not separately entertain pendent state claims); *Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016) (finding that a district court may sua sponte decline to exercise supplemental jurisdiction).

Because the Court would be declining jurisdiction and not reaching the merits of the state law claims, those claims should be dismissed without prejudice, unlike the federal claims, which should be dismissed with prejudice because dismissal under Rule 12(b)(6) for failure to state a claim is a judgment on the merits. *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182, (3d Cir. 1999) (finding that declination of supplemental jurisdiction is not adjudication on the merits, so dismissal of the state law claims should be without prejudice); *see also Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'").

## VI. RECOMMENDATION

Based on the foregoing, it is respectfully recommended that:

(1) The Defendants' motions to dismiss (Docs. 26, 33, 36, 38, 44, 46) be **GRANTED**;

(2) The Amended Complaint (doc. 20) be **DISMISSED** as follows: Counts 1 through 6 and 13 **DISMISSED with prejudice**, and Counts 7 through 12 **DISMISSED without prejudice**; and

(3) The Clerk of Court be directed to close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Date: August 18, 2026

s/*Sean A. Camoni*
Sean A. Camoni
United States Magistrate Judge