**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JACQUELINE WEVODAU ROHRBAUGH, Plaintiff** | : | **No. 1:25cv2439** |
| | : | **(Judge Munley)** |
| **v.** | : | |
| **LOWER PAXTON TOWNSHIP BUREAU OF POLICE, Harrisburg Area of Dauphin County, Pennsylvania; OFFICER BRYAN KUNKLE, in his official capacity; MICHAEL PATRICK ROHRBAUGH, as an individual and as a de facto government actor, ex-husband of Jacqueline; PETER M. VAUGHN, Attorney – as an individual and as de facto government actor; DANIEL J. DEVLIN, Attorney – as an individual and as a de facto government actor; HON. JEFFREY B. ENGLE, Family Court Judge – in his official capacity; DOES 1-100, unknown individuals or entities who acted in concert with other dfts; GETTLE VAUGHN LAW, LLC; and VAN DER VEEN, HARTSHORN, LEVIN and LINDHEIM, Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is the report and recommendation ("R&R") of Magistrate Judge Sean A. Camoni recommending that the court grant six motions to dismiss the amended complaint of Plaintiff Jacqueline Wevodau Rohrbaugh. (See

generally Doc. 62). Magistrate Judge Camoni recommends dismissal of Rohrbaugh's federal claims with prejudice and her state-law claims without prejudice when declining to exercise supplemental jurisdiction. Id. Also before the court are plaintiff's objections to the R&R. (Doc. 63). For the reasons that follow, the objections are sustained in part and overruled in part, and the court will adopt the report and recommendation as modified.

**Background**

At the motion to dismiss stage, facts alleged in plaintiff's amended complaint are taken as true. Trzaska v. L'Oreal USA, Inc., 865 F.3d 155, 162 (3d Cir. 2017). To comply with this standard, the court recites the factual background nearly verbatim as to that alleged in plaintiff's amended complaint, while omitting legal conclusions, speculative statements, or argument. (See Doc. 20). No imprimatur of the court as to the veracity of these facts is given or should be inferred.

As alleged in plaintiff's amended complaint, plaintiff and Patrick (Defendant Rohrbaugh) were once married, and are the parents of four children, two of whom are still minors.[1] (Doc. 20 ¶ 21). As of the filing of the amended complaint, P.R., a girl, was thirteen, while G.R., a boy, was twelve. Id. Patrick and plaintiff have been involved in a family law case that is still pending in

[1] For clarity, the court will, at times, refer to the Rohrbaughs using their first names.

Dauphin County, Pennsylvania. Id. On March 4, 2022, the family court issued a custody order (the "Order"). Id. ¶ 22.

On May 10, 2024, plaintiff retained Defendant Attorney Devlin. Id. ¶ 59. The last day of school that year was Wednesday, June 5. Id. ¶ 28. During the week beginning Monday, June 10, 2024, after talking with her husband, Nathaniel Showalter, plaintiff decided to move back to Thousand Oaks, California. Id. ¶ 30. Plaintiff told Attorney Devlin what she was planning to do. Id. ¶ 31. Devlin advised plaintiff that moving to California and exercising custody by taking the children would be in compliance with the Order. Id.

On Saturday, June 15, 2024, plaintiff packed the two children into her vehicle and set off for California. Id. ¶ 32. Based on her understanding of the Order, plaintiff believed she did not need to return the children to Pennsylvania until 6:00 p.m. on the Sunday that falls between 14 and 21 days before the start of the next school year. Id. The first day of the new school year was Monday, August 26, 2024. Id. ¶ 33. The Sunday that fell between 14 and 21 days prior was Sunday, August 11, 2024. Id. Thus, plaintiff believed that returning the children to Pennsylvania on or before 6:00 p.m. on Sunday, August 11, 2024, was authorized by the Order. Id. In the meantime, plaintiff believed she was free to attempt to get a court order allowing her to keep the kids in California. Id.

Plaintiff drove the kids southward on June 15, 2024. Id. ¶ 34. They made it as far as Tennessee, where they stayed the night in a hotel. Id. They made it to California on Wednesday, June 19, 2024. Id.

On Monday, June 17, 2024, by and through Defendant, Attorney Vaughn, Patrick filed in the family court a petition for emergency relief (the "Petition"). Id. ¶ 35. The Petition sought to immediately grant sole legal and physical custody to Patrick, and to suspend plaintiff's parental rights, pending further order of the court. Id. The Petition sought that plaintiff be sanctioned in any way the court deemed appropriate. Id. ¶ 36. The Petition stated, "As this Court is well-aware, the parties share legal and physical custody on an alternative week-on/week-off basis, with exchanges occurring on Sunday evenings." Id. ¶ 38. It also stated, "The father had to purchase a mobile phone or tablet for the children to communicate with him during the mother's periods of custody because the mother previously refused to allow the father to communicate with the children." Id. ¶ 40. Plaintiff never refused to allow Patrick to communicate with the children. Id. ¶ 41.

The Petition stated, "The father was made aware that the mother is once again taking the children to and intends to move to San Diego, California without notice, without Court approval, and has not provided a new address." Id. ¶ 42. It also stated,

> The father contacted the San Diego Police, who spoke with the mother on the telephone on Sunday, June 16, 2024 (Father's Day). The mother told the Police she was in California but when the Police pinged [the child] P.R.'s telephone, it was determined that they were in Tennessee. She provided false information to law enforcement, which is at least a misdemeanor under the Pennsylvania Criminal Code.

Id. ¶ 44 (alteration in original).

Despite this language, it was a Pennsylvania State Trooper who contacted plaintiff on that Sunday. Id. ¶ 45. Plaintiff informed the trooper that she and the children were first heading toward San Diego, California, where her husband Nathan's son lived, to meet there for a delayed Father's Day celebration. Id. The trooper then spoke to both the children over the phone and confirmed there were no safety concerns. Id.

The Petition further stated:

> During the evening of Father's Day, June 16, 2024, the father received a call from a blocked number. When he answered the phone, [the child] P.R. was on the call and the father asked her what was going on and where she was, to which she replied that she did not know and that she was scared. The call's duration was approximately 10 seconds and ended with the phone call being terminated abruptly.
> ...
>
> The father is gravely concerned for his children's health, safety and welfare.

Id. ¶¶ 46, 48 (alteration in original).

This phone call did not occur, and the child P.R. was not scared for any reason. Id. ¶ 47. P.R. was with her mother and her brother. Id.

On or about June 18, 2024, Judge Engle read the Petition. Id. ¶ 56. On that day, Judge Engle signed an order drafted by Vaughn, granting the Petition, and stating that (1) plaintiff was to return the children to Patrick's custody immediately; (2) a warrant would be issued for plaintiff's arrest effective June 21, 2024 should she fail to return the children to Patrick; (3) a contempt hearing would be scheduled by separate order; (4) plaintiff's rights of custody were temporarily suspended; (5) Patrick would have sole legal and physical custody of the children; and (6) appropriate law enforcement officers were directed to assist Patrick in the enforcement of the order. Id. ¶ 57.

On June 21, 2024, two days after plaintiff arrived in Thousand Oaks, Vaughn emailed Devlin, stating:

> I have every intention on seeing this particular portion of this case to the end in terms of insuring that these children are returned safely and promptly, even if it means that I have to go to California myself with a Bounty Hunter. This is the very last time that Ms. Rohrbaugh will have a chance to resolve this matter without paying the outstanding amounts of monies she owes in full and gets to clear herself of the privilege of not sitting behind the bars of the disgusting Dauphin County Prison for days, if not weeks or months.

Id. ¶ 60.

Immediately upon receiving the June 21, 2024 email from Patrick and Vaughn, plaintiff felt threatened and intimidated. Id. ¶ 63. On the basis of the threat of incarceration, plaintiff agreed to return the children to Pennsylvania as soon as possible. Id. ¶ 64.

On June 22, 2024, Officer Kunkle issued a police criminal complaint and warrant for plaintiff's arrest. Id. ¶ 65. Officer Kunkle signed his name and swore under penalty of perjury that the facts in the complaint were true and correct to the best of his knowledge. Id. The warrant states:

> The actor, Jacqueline Wevodau Rohrbaugh, the mother of P.R. (12yoa) and G.R. (10yoa), children under the age of 18, did knowingly or recklessly, take the children from the custody of their parent, guardian or lawful custodian, when the actor had no privilege to do so and the actor had knowledge that the actor's conduct would cause serious alarm for the safety of the child, or acted in reckless disregard of a likelihood of causing such alarm to wit:
>
> Jacqueline Rohrbaugh failed to turn over custody of her two children P.R. and G.R. to their father on 06/15/2024 in violation of a custody agreement in place.

Id. ¶ 67.

The warrant contains a section entitled "AFFIDAVIT OF PROBABLE CAUSE," also signed by Kunkle. Id. ¶ 69. It states that other officers were dispatched to speak with Patrick, and then states, "Based upon an existing custody order, J. Rohrbaugh was supposed to have dropped the children off with M. Rohrbaugh at 1800hrs on 06/15/2024, but had failed to do so." Id. It also states, "On 06/16/2024 [6 days prior] M. Rohrbaugh received an email from J. Rohrbaugh advising him that she intended to relocate to California with both children." Id. ¶ 71.

Plaintiff did want to relocate the children and intended to later seek a court order to that effect. Id. ¶ 72. She informed Patrick about this. Id.

The affidavit states, "J. Rohrbaugh failed to appear and bring the children back by the prescribed time and a warrant for contempt of court was issued for J. Rohrbaugh." Id. ¶ 73. It also states, "Based upon the above listed facts, probable cause exists that violations of PA 18:2904(a) – Interference with the Custody of Children has occurred, and that Jacqueline [Wevodau] Rohrbaugh committed those violation [sic]. Your Affiant is requesting that she be charged with two counts of PA 1 8:2904(a) – Interference with the Custody of Children which are graded as F3s [third degree felonies]." Id. ¶ 75 (alterations in original). Officer Kunkle did not obtain and read a copy of the Order. Id. ¶ 77.

Lower Paxton Police were notified and Detective Dan Smeck contacted plaintiff, stating to her that she should turn herself in. Id. ¶ 78. During the phone conversation, plaintiff explained to Smeck that she does not have any prior criminal record and that she is a medical provider and that her medical license would be jeopardized by these felony criminal charges. Id. ¶ 78. Detective Smeck replied that he would call Judge Wendy Grella's office and confirm when she would be there, and that just he and plaintiff could meet there and go before Judge Grella to have the charges dismissed. Id. ¶ 80. Plaintiff planned to show the judge the Order and explain that she had every right to do what she did. Id.

A few days later, Smeck texted plaintiff that she had to be processed for these criminal charges and she would have to meet him at the booking center by Dauphin County Prison. Id. ¶ 81. Plaintiff told him she was concerned that they would try and keep her in prison; Smeck denied that would happen. Id. Smeck assured plaintiff that she would be processed and after her video arraignment with Judge Grella, a preliminary hearing would be scheduled and plaintiff would be released. Id. ¶ 82. Plaintiff met Smeck at the booking center on July 2, 2024. Id.

While in handcuffs during her booking process (fingerprinted and mug shots taken), the booking center staff showed a document to plaintiff, asking, "Were you aware of this capias?" Id. ¶ 83. Plaintiff replied, "No. What is a capias?" Id. The booking center staff explained a "capias" was a bench warrant for plaintiff's criminal contempt and there was a detainer on it, so plaintiff would be held without bail options and taken up to prison that day. Id. ¶ 84. Plaintiff then asked why her name was not on the document and why there was no judge signature at the bottom of the document. Id. ¶ 85. Staff did not respond. Id.

Plaintiff spent 3 nights and 4 days in Dauphin County Prison for the first time in her life. Id. ¶ 86.

On July 5, 2024, plaintiff was released after a video hearing with Judge Deborah Curcillo. Id. ¶ 89. Plaintiff's release conditions stated that she could not

take the children out of Dauphin County and she was to contact pretrial services after the weekend regarding electronic monitoring until her hearing, which was ultimately scheduled by Judge Engle, the family court judge. Id. ¶ 89. Arrangements for the bail conditions from her arraignment were made and plaintiff was released. Id. ¶ 90. When plaintiff called pretrial services, someone named Shannon said she did not have any paperwork about what their services were supposed to do. Id. Shannon explained that pretrial services are involved with criminal cases, and only criminal cases are associated with electronic monitoring, not civil cases. Id. Plaintiff was told to routinely check in with pretrial services by text, which she did. Id.

On July 12, 2024, Attorney Devlin filed in family court on plaintiff's behalf a motion for reconsideration of Judge Engle's June 21, 2024 order. Id. ¶ 91. The motion argued "Mother has not been afforded notice or an opportunity to be heard, thereby depriving Mother of due process of law and an opportunity to present a defense to Father's allegations." Id. ¶ 92. The motion was denied. Id. ¶ 97.

On July 17, 2024, Devlin wrote a sworn declaration, in which he stated:

> In reviewing the [Order], it was my interpretation, and advice to [plaintiff], that she must follow the [Order] as written, and she would be in compliance with Paragraph 4(a) if she exercised summer break partial physical custody, in California, in accordance with Paragraph 4 and the terms of the [Order] as written.

Id. ¶ 99 (emphasis removed).

Devlin never filed this declaration. Id. ¶ 100.

In September 2024, a hearing took place before Judge Engle at which plaintiff was found civilly liable for contempt of custody. Id. ¶ 103. Plaintiff was not convicted of a crime. Id. ¶ 104. Devlin was retained to appeal the contempt order, and did so, but did not state the Order authorized plaintiff to do what she did. Id. ¶ 105.

On November 25, 2024, in Criminal Case No. CP-22-CR-0003533-2024, Commonwealth of Pennsylvania vs. Jacqueline Wevodau Rohrbauch [sic], the Commonwealth issued a NOTICE OF WITHDRAWAL OF CHARGES, signed by Francis T. Chardo, District Attorney, which states "Please mark case CP-22-CR-0003533-2024 as closed." Id. ¶ 106. The notice of withdrawal states "I [Mr. Chardo] have consulted with the father of G.R. and P.R. [Patrick] prior to filing this notice and he concurs in this withdrawal." Id. ¶ 107 (alterations in original).

On these alleged facts, plaintiff brought a *pro se* complaint alleging three claims under 42 U.S.C. § 1983 for violations of her Fourteenth Amendment right to substantive due process (judicial deception and conspiracy, fabrication of evidence, and malicious prosecution); one claim under § 1983 for violation of her Fourteenth Amendment right to procedural due process (judicial deception and conspiracy); and one claim under § 1983 for a violation of the Fourth Amendment

for false arrest, false imprisonment, and conspiracy to same against Defendants Kunkle, Rohrbaugh, Vaughn, Devlin, and Lower Paxton Township Bureau of Police, a Monell[2] claim under § 1983 against Defendant Lower Paxton Township Bureau of Police; a claim for declaratory judgment against Defendant Judge Engle in his official capacity, and six state-law claims. (Doc. 20 at 19–38).

All defendants move the court to dismiss for failure to state a claim or lack of subject matter jurisdiction. (Docs. 33, 36, 38, 44, 46).

**Jurisdiction**

The Amended Complaint invokes the court's federal question jurisdiction. See 28 U.S.C. § 1331. The court exercises supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a).

**Summary of Report and Recommendation**

The R&R concludes that the overarching defect for all claims is plaintiff's reliance on her mistaken belief that the Order authorized plaintiff's custody on Father's Day. (Doc. 62 at 10–16). The R&R considers dismissal on this point sufficient. Id. at 16. The R&R proceeds to analyze the elements of each constitutional claim and recommends dismissal for plaintiff's failure to state a claim. Id. at 21–39. The R&R also recommends dismissing the declaratory

[2] Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

judgment claim under the Rooker-Feldman[3] doctrine for lack of subject matter jurisdiction, and for the court to decline supplemental jurisdiction over the state-law claims. Id. at 20–21, 39. The R&R further recommends granting all motions to dismiss as to the federal claims, dismissing the federal claims with prejudice and dismissing all state-law claims without prejudice. Id. at 40–41.

Plaintiff raises ten objections to the R&R. (See generally Doc. 63).

**Standards of Review**

## I. Objections to Reports and Recommendations

When considering a report and recommendation, a district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. § 636(b)(1)(C); Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). "[T]he court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1)(C). The district court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." Id.

## II. Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) permits a pre-answer motion to dismiss for "lack of subject-matter jurisdiction." Subject matter jurisdiction

[3] See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005).

"involves a court's power to hear a case." In re Caterbone, 640 F.3d 108, 111 (3d Cir. 2011) (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)). It "can never be forfeited or waived, such that courts have an independent obligation to determine whether [it] exists, even in the absence of a challenge from any party." Id. (quoting Arbaugh, 546 U.S. at 514) (citation modified). It is the plaintiff's burden to establish the existence of subject matter jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." Papp v. Fore-Kast Sales Co., 842 F.3d 805, 811 (3d Cir. 2016) (quoting Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016)). A facial attack, such as here, "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" Davis, 824 F.3d at 346 (quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006)).

**III. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

The court tests the sufficiency of a complaint's allegations when considering a Rule 12(b)(6) motion. To survive a motion to dismiss, "a complaint must provide 'a short plain statement of the claim showing that the pleader is entitled to relief.'" Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). This means "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pleaded which allows the court to draw the reasonable inference that the defendants are liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 566). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pa. State Univ., 138 F.4th 731, 743 (3d Cir. 2025). The second step involves reviewing the operative pleading and "disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual." Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citation modified). "The third step evaluates the plausibility of the remaining allegations." Id. In evaluating the plausibility of the plaintiff's allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. Id. (citations omitted).

## Analysis

The court addresses each objection in turn.

## I.

Judge Camoni found that all of plaintiff's claims were predicated on a finding that defendants misinterpreted a 2022 custody order (the "Order") "intentionally to cause [her] harm and violate her rights." (Doc. 62 at 12.) He observed that plaintiff's claims depend on the finding that she did not violate the Order when she took her children to California during summer break in 2024. Id. at 12–13. Judge Camoni explained that plaintiff did violate the order, because Defendant Rohrbaugh, the children's father, had a right of custody on Father's Day that superseded plaintiff's summer break rights. Id. at 13–16.

Plaintiff objects, arguing that the R&R "resolved a contested construction of a written instrument (the Order) against the non-moving party at the pleading stage." (Doc. 63 at 2–3). Plaintiff argues "under Third Circuit law, when the truth of facts in an integral document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." Id. (quoting Doe, 30 F.4th at 342) (citation modified).

Construction of a court order is not a fact—it is a "purely legal issue." Apex Fountain Sales, Inc. v. Kleinfeld, 818 F.2d 1089, 1097 (3d Cir. 1987). Here, the Order was first construed in a Pennsylvania court, by Judge Engle, when he held

that plaintiff was in violation. (See Doc. 27-2 at 4 & n.6 ("Since that day was Father's Day, the exchange back to Father should have occurred on Saturday June 15, 2024 in order to allow Father to spend Sunday with the children.")); see also id. at 7 (holding plaintiff as not credible and her interpretation of the Order as "illogical and completely self-serving"). As a matter of law, plaintiff was in violation. Ergo, any statements made that she was in violation were not false.

Objection 1 is overruled.

**II.**

Objection 2 argues that even if such construction of the Order is accurate, it does not make "the challenged statements true, does not supply probable cause for two felony counts, and does not defeat thirteen causes of action." (Doc. 63 at 3–4).

To the extent "the challenged statements" means "Detective Kunkle's sworn statement that [plaintiff] failed to appear and bring the children back by the prescribed time," id. at 2, the court disagrees with plaintiff's above argument. Context is helpful. Kunkle stated, "Based upon an existing custody order, J. Rohrbaugh was supposed to have dropped the children off with M. Rohrbaugh at 1800 hrs on 06/15/2024, but had failed to do so." (Doc. 20 ¶ 69). June 16, 2024, was Father's Day, a mandatory day of paternal custody as stated above. The Order, as a matter of law, requires that paternal custody begin at 6 p.m. the day

before Father's Day. (Doc. 37-1 at 4–5). So, Kunkle's statement was accurate, because plaintiff did not bring the children back by 6 p.m. on the evening before Father's Day.

As to probable cause, as the R&R concluded, and the court agrees, Detective Kunkle had a "sound basis" to allege plaintiff's lack of privilege to retain her children when he sought a warrant for her arrest, because under Pennsylvania law, lack of privilege arises with "the continued maintenance of [children] outside of the custodian's dominion." (Doc. 62 at 31 (quoting Commonwealth v. Tompkins, 253 A.3d 301, at *4 (Pa. Super. Ct. 2021) (table)). The court agrees with the R&R's conclusion that because a Pennsylvania judge had already held that plaintiff continued to maintain her children outside of her custodial dominion, (see Doc. 20 ¶ 57), Kunkle's statement was supported by probable cause. (Doc. 62 at 28).

As to plaintiff's argument that Judge Engle's construction of the Order "does not defeat thirteen causes of action," the court focuses only on plaintiff's federal claims. In doing so, the court agrees that plaintiff's misinterpretation of the Order defeats her federal claims. Cause of Action 1 (Substantive Due Process - Judicial Deception and Conspiracy) relies on how defendants "lied" about plaintiff's "perfect right to take the children to California on June 15, 2024." (Doc. 20 ¶¶ 124, 131). Cause of Action 2 (Substantive Due Process -

Fabrication of Evidence) relies on defendants' knowledge "that the Operative Order authorized [plaintiff] to take the kids." Id. ¶ 138. Cause of Action 3 (Procedural Due Process – Judicial Deception and Conspiracy) states that "[i]f any hearing had taken place, [plaintiff] would have explained that the Operative Order authorized her to take the kids." Id. ¶ 151. Cause of Action 4 (False Arrest / False Imprisonment and Conspiracy to Same) alleges falsehoods and a lack of probable cause because "the Operative Order explicitly authorized [plaintiff] to move to California and to exercise child custody until 6PM on August 11, 2024." Id. ¶¶ 160–164. Cause of Action 5 (Substantive Due Process – Malicious Prosecution) cites a lack of probable cause based on the fact "that the Operative Order authorized [plaintiff] to take the children to California, i.e. to do exactly what she did." Id. ¶ 174. Cause of Action 6 (Substantive Due Process – Monell claim) explains how Defendant Rohrbaugh lied to Kunkle by "indicating that the Operative Order prohibited [plaintiff] from taking the kids." Id. ¶ 188. It goes on to state that "Lower Paxton Township demonstrated deliberate indifference to the truth or falsity of Patrick's Petition." Id. ¶ 190. Finally, Cause of Action 13 alleges "an actual legal controversy exists" because "Judge Engle believes he can pretend that an order says something that it does not, and can issue a new order in stark contradiction to the pending order of a different judge." Id. ¶ 256. All of

these claims rely on plaintiff's misreading of the Order. And so, all of them fail for that reason, as stated in the R&R.[4]

Objection 2 is overruled.

**III.**

Objection 3 states that the R&R incorrectly arrived at finding probable cause for plaintiff's warrant because it "never performed the corrected-affidavit analysis that Franks v. Delaware, 438 U.S. 154 (1978), and Wilson v. Russo require, and it credited a rationale — Father's Day—that appears nowhere in Detective Kunkle's affidavit, in the Petition for Emergency Relief, or in Judge Engle's June 18, 2024 order." (Doc. 63 at 4).

Corrected affidavit analysis is conducted when there is "sufficient evidence of omissions and assertions made knowingly, or with reckless disregard for the truth" in seeking a warrant. Wilson v. Russo, 212 F.3d 781, 788–89 (3d Cir. 2000). In such instance, courts "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." Id. at 789. The watchword is "inaccuracies." The purpose of corrected affidavit analysis is to remove "false statement[s] necessary to the finding of probable cause," if they were made

---

[4] Nevertheless, Cause of Action 13 is dismissed for lack of subject matter jurisdiction, and Lower Paxton Township Bureau of Police is dismissed as a non-suable entity, as discussed in the R&R and infra.

"knowingly and intentionally, or with reckless disregard for the truth." Id. at 787 (quoting Franks, 438 U.S. at 155). As the R&R explains, and this court has explained above, the statements made by Kunkle in his affidavit were not false. So, corrected affidavit analysis is not called for—there is nothing to excise.

As to the argument that "Father's Day" does not appear in Kunkle's affidavit, the argument is not well-taken. As plaintiff alleges, Kunkle stated "J. Rohrbaugh was supposed to have dropped the children off with M. Rohrbaugh at 1800hrs on 06/15/2024." (Doc. 20 ¶ 69). June 16, 2026, was Father's Day, and the holiday schedule in the Order called for paternal custody beginning at "6:00 p.m. the day before Father's Day." (Doc. 37-1 at 4–5). Clearly, Kunkle was referencing this provision.

Objection 3 is overruled.

**IV.**

Objection 4 states, "Franks is satisfied by reckless disregard for the truth. The R&R demanded that Plaintiff allege Detective Kunkle acted 'deliberately,' and treated an allegation that he swore to a custody violation without ever obtaining or reading the custody order as mere negligence." (Doc. 63 at 4).

The R&R did not demand allegations that Kunkle acted deliberately. (See Doc. 62 at 27–28). Rather, it stated that plaintiff did not allege deliberate action, and that plaintiff's legal conclusions did not establish "that Detective Kunkle

knowingly, deliberately, or recklessly made false statements." Id. at 28; see also id. ("Those facts, all of which are stated in the Amended Complaint and so are taken as true, directly contradict Ms. Rohrbaugh's allegation that Detective Kunkle knowingly or recklessly made false statements.").

Nor did the R&R ever state that Kunkle acted negligently. The R&R correctly disposed of plaintiff's judicial deception claim against Kunkle on the grounds that he did not make a false statement or material omission, necessary to a claim under Franks. Id. at 27–28.

Objection 4 is overruled.

**V.**

Objection 5 states, "The R&R required Plaintiff to 'provide persuasive evidence' at the pleading stage. That is an evidentiary standard, not a pleading standard." (Doc. 63 at 4). This objection appears to derive from a portion of the R&R where Magistrate Judge Camoni references Boseman v. Upper Providence Township, 680 F. App'x 65 (3d Cir. 2017) in analyzing plaintiff's fabrication of evidence claim. (Doc. 62 at 29). The expanded quote from Boseman, only partially cited in the R&R, states, "Lastly, because we require persuasive evidence supporting a conclusion that the proponents of the evidence are aware that evidence is incorrect or that the evidence is offered in bad faith, we would look for allegations describing such evidence in a pleading designed to survive a

motion to dismiss." Id. at 70 (citation omitted). Even if the R&R quoted the entirety of this passage rather than only a portion, which requires "allegations describing" persuasive evidence, the result is the same. The R&R accurately concluded that the evidence pleaded as false in the amended complaint was not false or offered in bad faith. (Doc. 62 at 29–30). And so, the amended complaint does not "describe" persuasive evidence.

Objection 5 is overruled.

**VI.**

As "[t]o the R&R's state-action and conspiracy analysis (R&R at 21-25, 26-27)," (Doc. 63 at 4), plaintiff first objects because, "The R&R addressed only FAC ¶ 113 (the 'symbiotic relationship' and billable-hours allegation) and did not address FAC ¶¶ 49-64 and 94-102, which plead the period, object, and specific acts of the alleged agreement." Id. The court disagrees. While the R&R may not have specifically cited paragraphs 49–64 and 94–102 of the amended complaint, its conclusion that "none of the actions of the Nominally Private Actors satisfy any of the enumerated conditions or amount to 'joint action' between the state and private actors," (Doc. 62 at 23), necessarily implies a reading of those paragraphs.

The court has reviewed the paragraphs *de novo*, and agrees with the R&R's conclusion. At all times, plaintiff fails to plead joint action between the

state and the private defendants. Plaintiff merely pleads that Kunkle submitted false statements in support of a warrant, and that the private actors indirectly benefitted by his "failure to investigate." (Doc. 20 ¶¶ 65–77, 113).

Nor does plaintiff plead that the private actors exercised state power. See Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009). As the R&R correctly observes, only private action is alleged by the private actors: the alleged double-sided dealings of Devlin and the cooked-up controversy and filing of a petition for emergency relief—by Vaughn in pursuit of additional billable hours, and by Rohrbaugh out of concern "with his own ego." (Doc. 20 ¶¶ 35, 49–51, 91–102).

As to whether the private defendants "acted with the help of or in concert with state officials," or that "the state insinuated itself so far into a position of interdependence with the private party that it must be recognized as a joint participant in the challenged activity," Kach, 589 F.3d at 346 (citation modified), plaintiff only alleges that "Kunkle was apparently relying on false information supplied to him by Patrick and Vaughn." (Doc. 20 ¶ 68). This speculative statement must be ignored when determining whether plaintiff states a claim. Lutz, 49 F.4th at 328.

Plaintiff next argues as circular the R&R's reasoning that Kunkle could not have engaged in a Section 1983 conspiracy with the private defendants because "none of the other alleged co-conspirators were state actors." (Doc. 63 at 4

(quoting Doc. 62 at 26)). The court does not find that statement in the R&R dispositive to plaintiff's claim and does not rely on it. More important to the R&R's adjudication, which the court agrees with, is that there are no facts pleaded to suggest that Kunkle and the private actors ever had a meeting of the minds or understanding. The amended complaint only offers the conclusory statement that "[t]hese Nominally Private Actor Defendants were willful participants in joint action with Officer Kunkle, as described throughout," (Doc. 20 ¶ 115), and her speculation that Kunkle "apparently" relied on false information supplied by Patrick. Id. ¶ 68. Striking these clauses, as the court must, the conspiracy claim fails.

Objection 6 is overruled.

**VII.**

Objection 7 argues that Judge Engle's June 18, 2024 emergency order is interlocutory, and so, under Malhan v. Sec'y U.S. Dep't of State, 938 F.3d 453 (3d Cir. 2019), it was error for the R&R to apply Rooker-Feldman doctrine to dispose of Cause of Action 13. (Doc. 63 at 4). Plaintiff is correct that in Malhan, the Third Circuit held that the Rooker-Feldman doctrine does deprive a district court of jurisdiction to hear claims concerning interlocutory state court orders. 938 F.3d at 461. But just last term, the Supreme Court held differently, explaining that such a rule "would needlessly complicate the Rooker-Feldman

analysis," because "[i]t is not always straightforward to determine whether a given state-court judgment is a reviewable final judgment." T.M. v. Univ. of Md. Med. Sys. Corp., 608 U.S. at ___, ___, 146 S. Ct. 1739, 1753 (2026). The Court "[left] the doctrine as it found it: narrowly confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Id. at ___, 146 S. Ct. at 1753–54 (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). The R&R correctly applied the doctrine under the law as it stands today.

Even if the doctrine was correctly applied, plaintiff argues it was error for the R&R to recommend dismissal with prejudice, because a dismissal for want of subject matter jurisdiction "cannot be with prejudice." (Doc. 63 at 4). Plaintiff is correct. Dismissal of a claim based on Rooker-Feldman doctrine is dismissal "for want of subject-matter jurisdiction." Exxon, 544 U.S. at 284. And dismissal for want of subject matter jurisdiction is "by definition without prejudice." N.J. Physicians, Inc. v. President of the U.S., 653 F.3d 234, 241 n.8 (3d Cir. 2011) (citing Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 182 (3d Cir. 1999)).

Objection 7 is sustained in part and overruled in part.

## VIII.

Plaintiff objects to the prospect of dismissal of her constitutional claims with prejudice because the R&R did not conduct a futility of amendment analysis. (Doc. 63 at 5). "Pro se plaintiffs should be given an opportunity to amend their complaints unless it clearly appears that the deficiency cannot be overcome by amendment." Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981) (citation omitted). While the R&R does not use the words "futile" or "futility," it suggests futility of amendment because all of plaintiff's claims are grounded in an incorrect interpretation of the Order. (Doc. 62 at 15–16, 40). This court, too, can discern no way for plaintiff to rewrite her claims to survive a Rule 12(b)(6) motion if she adopts a correct construction of the Order. Because amendment would be futile, Causes of Action 1 through 6 will be dismissed with prejudice.

Objection 8 is overruled.

## IX.

Objection 9 argues that if the Lower Paxton Township Bureau of Police "is a non-suable sub-unit, the correct disposition is leave to substitute Lower Paxton Township, not permanent dismissal of the municipal claim." (Doc. 63 at 5). But as the R&R explains, only Monell claims can be brought against a municipality. (Doc. 62 at 36–37). As Causes of Action 1–5 are not Monell claims, the lone option is dismissal of the bureau as a non-suable entity, because the township

cannot be substituted in. As to Cause of Action 6, which is a Monell claim, the R&R did not only recommend dismissal on the grounds that the Bureau is a non-suable entity. It also recommended dismissal because plaintiff fails to state a claim because she does not allege a policy or custom. (Doc. 62 at 35–39). And because the court agrees with the R&R's reasoning in that regard, amending plaintiff's complaint to substitute the township for the bureau would be futile.

Objection 9 is overruled.

**X.**

The R&R recommends the court decline supplemental jurisdiction over plaintiff's state-law claims and dismiss them without prejudice. (Doc. 62 at 39–40). Plaintiff objects because this recommendation "rests entirely on the dismissal of the federal claims and falls with it." (Doc. 63 at 5). The court however, will dismiss all of plaintiff's federal claims for the reasons explained herein, and otherwise explained in the R&R. And so, it remains at the court's discretion to decline supplemental jurisdiction.

Objection 10 is overruled.

**XI. Plaintiff's General Objection**

Plaintiff generally objects "to the recommendation that the motions to dismiss . . . be granted and that the case be closed." Id. A general objection to an R&R does not trigger *de novo* review. Goney v. Clark, 749 F.2d 5, 6–7 (3d

Cir. 1984) (per curiam). As to those portions of the R&R not specifically objected to by plaintiff, the court has reviewed them with "reasoned consideration" and discerns no clear error from the analysis. City of Long Branch, 866 F.3d at 99–100 (citations omitted). Incorporating those portions not objected to, with the reasoning stated herein, the court will adopt the recommendation to grant the motions to dismiss the federal claims and close this case.

**Conclusion**

For the reasons set forth above, the R&R, (Doc. 62), will be adopted as modified. Plaintiff's federal causes of action 1–6 will be dismissed with prejudice. Plaintiff's federal cause of action 13 will be dismissed without prejudice for lack of subject matter jurisdiction. The court will decline to exercise supplemental jurisdiction over plaintiff's state-law claims, and those claims will be dismissed without prejudice. 28 U.S.C. § 1367(c)(3). Defendant Michael Patrick Rohrbaugh's motion to dismiss the amended complaint, (Doc. 26), will be granted as to the federal claims and denied as moot as to the state-law claims. Defendant Judge Jeffrey B. Engle's motion to dismiss seeks dismissal of the first amended complaint with prejudice, (Doc. 33), so that motion will be granted in part and denied in part, as the court deems it appropriate to dismiss cause of action 13 without prejudice for lack of subject matter jurisdiction. Defendants, Lower Paxton Township Bureau of Police and Detective Bryan Kunkle's motion

to dismiss plaintiff's amended complaint pursuant to FED. R. CIV. P. 12(b)(6), (Doc. 36), will be granted as to the federal claims and denied as moot as to the state-law claims. Defendant Daniel J. Devlin's motion to dismiss plaintiff's amended complaint, (Doc. 38), will be granted in part and denied as moot in part.[5] Peter M. Vaughn and Gettle Vaughn Law, LLC's motion to dismiss, (Doc. 44), will be granted in part and denied as moot in part. The motion to dismiss plaintiff's complaint pursuant to FED. R. CIV. P. 12(b)(6) filed by Defendant van der Veen, Hartshorn, Levin, and Lindheim, (Doc. 46), will be denied as moot. Any ostensibly alleged federal claim against a Doe defendant will be dismissed with prejudice, and any ostensibly alleged state-law claim against a Doe defendant will be dismissed without prejudice. Bey v. City of Philadelphia, 6 F. Supp. 2d 422, 424 (E.D. Pa. 1998); see Hindes v. FDIC, 137 F.3d 148, 159 (3d Cir. 1998) ("an action cannot proceed solely against unnamed parties"). An appropriate order follows.

**Date:** 9/1/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**

[5] Devlin's motion, (Doc. 38), asks the court to deny plaintiff's claims with prejudice, but infers no consideration of her state-law claims, because he suggests the court "loses" its supplemental jurisdiction if the federal claims fail. Id. at 3. However, in his brief in support, Devlin argues the merits of plaintiff's state-law claims. To the extent Devlin is moving the court to dismiss plaintiff's state-law claims for failure to state a claim, that motion is denied as moot.